John McAllister

*v.*

Livingston Compton.

Evidence—*acts of parties, when inconsistent with their claim.* In a proceeding to foreclose a mortgage, the mortgagor set up as a defense that the notes and mortgage were given merely to secure the performance of an agreement to convey to the mortgagee certain property, and were to be canceled when such conveyance was made, and that he made such conveyance, and therefore the consideration of the notes had failed. On the trial it appeared, that, after said notes and mortgage were executed, the mortgagor made three different contracts with the mortgagee, at three different times, in each of which contracts he recognized the validity of these notes, and, in part, provided for their payment; that in performing these contracts he incurred great expense, knowing, at the time, that the only reimbursement he was to get was by way of credit on these notes, and that he, on one or more occasions, stated that he was performing these contracts to pay off this mortgage: *Held,* that whilst these facts were not absolutely conclusive against the defense set up, they could only be overcome by clear and satisfactory proof.

Appeal from the Circuit Court of Winnebago county; the Hon. William Brown, Judge, presiding.

Mr. S. K. Dow, and Mr. E. H. Baker, for the appellant.

Mr. Wm. Lathrop, for the appellee.

Mr. Justice Walker delivered the opinion of the Court:

At the September term, 1871, of the Winnebago circuit court, appellee filed a bill in chancery against appellant, to foreclose a mortgage on a farm near the city of Rockford, and some lots in that city.

Appellant set up as a defense, that he and appellee had entered into an agreement to exchange something more than $20,000 worth of real estate; that the property to be conveyed by appellee to appellant, was agreed to be worth as much as that which was to be conveyed to appellee by appellant; that there was no agreement that either should pay to the other any money; that when appellee conveyed the farm and Rockford city lots, appellant conveyed a portion of the property he was to give in exchange to appellee, but that the balance was so situated that he could not then make the conveyance, and it was agreed, to close up the matter, that appellant should execute the notes and mortgage as a security for the conveyance of the balance of the real estate, and it was also agreed that when he should so convey, the notes were to be surrendered and the mortgage canceled; that in pursuance of the agreement he executed and delivered all the deeds, or had it done, so as to pass the title to appellee of the property he was to transfer to him; that he thereby became entitled to a surrender of all the notes and a satisfaction of the mortgage, but appellee had only delivered to him the two notes last maturing, and held and claimed payment of the three for which he is endeavoring to foreclose the mortgage. He also sets up payments and set-offs to the same, which had not been indorsed on the notes.

On the trial, much uncertain and conflicting evidence was heard, and the court deducted from the notes $1070 as a failure of consideration, and $750 for labor and materials done and furnished in erecting certain buildings for appellee, and rendered a decree for the balance due on the notes, amounting to $3741.45, ordered its payment, with six per cent, within

sixty days, and, in case of default, that the master sell the property for the satisfaction of that sum and costs. To reverse this decree, defendant appeals to this court.

It is urged that, under the evidence, the court below should have found that there was no consideration to support the notes, or if there had been that it had failed, and that, under the cross-bill, they should have been canceled and the mortgage satisfied. If it were not for the contracts with appellee to erect certain buildings, and proof of admissions made by appellant after the execution of the notes and mortgage, we should strongly incline to take that view of the case.

It, however, appears, that after the notes were given and the mortgage executed. and a sufficient time had elapsed for appellant to fully understand the situation of the transaction, he recognized the validity of these notes by agreeing to have applied. as credits upon them, a portion of the sum he was to receive for the buildings.

The evidence shows that, on the 27th day of August, 1870, appellant agreed to erect for appellee two houses, for $3000— one thousand in cash and the other two thousand to be applied to indebtedness from appellant to appellee. This agreement is in writing, and was after the trade had been made in reference to the land, but it had not then been fully executed. On the 15th of the following month, the notes and mortgage were given. On the 14th of the following November the parties entered into an agreement for the building of another house by appellant for appellee, and in this agreement the former agreement is referred to, the notes in suit are described, and the sum to be paid to appellant it was agreed should be credited in equal or *pro rata* amounts on them. On the 21st of the same month, a supplemental agreement was executed, by which a slight change was made in the contract of the 14th, by which appellant was to receive $100 more, to be credited as agreed in the former contract.

Here we find three different contracts entered into after the notes were given, recognizing their validity and provid-

ing for their payment in part—the first more than a month after the notes were given, and the last one three months. In the face of such deliberate and solemn admissions as these almost amounting to an estoppel, who can say he did not owe the notes? Whilst not absolutely conclusive, they can only be overcome by clear and satisfactory proof. Again, as if it was intended to give emphasis to these declarations, and with the admissions referred to, appellant actually employed mechanics and entered upon the construction of the buildings, becoming personally liable for a large sum of money, when he knew that it could, under his written agreement, only be reimbursed to him by a credit on these notes. He also said to one or more of the builders, that he was constructing the houses to pay off a mortgage on his farm.

These facts are convincing beyond all doubt or cavil. Could any man make such an agreement, and enter upon its execution, and incur liabilities to the extent of thousands of dollars, to pay and discharge notes only given to secure the conveyance of lands, which had been executed and delivered, and he fully entitled to have the notes taken up and canceled? Ordinary business men do not so act, and we can conceive no possible motive for such conduct, unless appellee knew or believed he owed these notes. If he did not, it would look like the most reckless disregard for his own interest. It would seem as though he was making persistent efforts to dispossess himself of all his means in the most speedy manner, if he knew, as he claims, that he owed appellant nothing.

These facts would seem to fix the liability beyond all question, nor has its force been broken by the other evidence in the case. There is no escape from the conclusion that appellant believed, without any doubt, that he owed these notes when he executed these building contracts, and made the admissions to the mechanics.

From a careful examination of the conflicting evidence in this record, we do not see that the court erred in the amount it deducted from these notes because of the failure of the

174          T., P. & W. Ry. Co. *v.* Pence.          [Sept. T.

Syllabus.

consideration. It is not free from doubt that the sum was full large, but appellee has not complained. And the same is true as to the sum found for labor and materials furnished toward the erection of the buildings.

A careful examination of this record has failed to disclose to us that there is any error in the decree, and it must be affirmed.

*Decree affirmed.*